FILED IN CHAMBERS
U.S.D.C. Rome

MAR 0 5 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARIA CONNOR,

        Plaintiff,

    v.

SUN TRUST BANK,

        Defendant.

CIVIL ACTION

NO. 1:07-CV-0650-RLV

## O R D E R

This action is brought under the Family and Medical Leave Act of 1993 ("FMLA"), 26 U.S.C. §§ 2601-19 (2000). The plaintiff alleges that her former employer, Sun Trust, violated the FMLA by interfering with her substantive rights and retaliating against her for engaging in protected activity. After conducting discovery, the plaintiff has filed a Motion for Sanctions for Destruction of Evidence [Doc. No. 30] and a Motion for Summary Judgment [Doc. No. 37] on the FMLA interference claim; Sun Trust has filed a Motion for Summary Judgment [Doc. No. 42] on all claims. For the following reasons, the motion for sanctions is granted, but the motions for summary judgment are denied.

### I. FACTUAL BACKGROUND

The plaintiff is a former vice president level employee of Sun Trust who began her employment in 2004. Throughout her employment,

the plaintiff worked in Sun Trust's Business Performance Group ("BPG"), a division of the Enterprise Information Services ("EIS") department, and she reported to BPG Manager Leslie Weigel.  Toward the end of her employment, the plaintiff's duties included managing internal communications for EIS and serving as communications manager for Sun Trust's Project 2010, a joint project between Sun Trust and IBM to improve the delivery of technology projects to Sun Trust; she also managed Sun Trust's Enterprise Publication Services ("EPS") group, which handled internal communications to Sun Trust employees about bank operating procedures and policies.  As part of her responsibilities with the EIS communications team, Project 2010, and the EPS group, the plaintiff was given responsibility in June 2006 to manage eight employees assigned to these various groups.

The motions for summary judgment address a different set of facts than the motion for sanctions.  Therefore, the relevant factual background is divided in two parts.

**A. Motions for Summary Judgment**

In November 2006, the plaintiff adopted a child and took two months of FMLA leave starting on November 8, 2006, and ending on January 2, 2007.  Before she took leave, two of the plaintiff's

2

eight employees were reassigned,[1] leaving the plaintiff with only six employees reporting to her at the time her FMLA leave commenced.   Three of the six employees were assigned to the plaintiff's EIS communications team and three were assigned to the EPS group.

While the plaintiff was on FMLA leave, her responsibilities for the EPS group were taken away.   In December 2006, one of the EPS group employees, Mr. Swanson, unexpectedly resigned.   The three EPS group employees were located in Orlando (the plaintiff was located in Atlanta) and Mr. Swanson served as the on-site supervisor for the other two EPS group employees.   After Mr. Swanson resigned, Ms. Weigel, the plaintiff's supervisor and business manager of BPG, approached Ms. Bitzis, the senior manager of the Banking Services department, which was another department of EIS that had a large team co-located in the same Orlando building. They discussed transferring the EPS group and its two remaining junior-level members to the Banking Services department.

---

[1]One employee, Ms. Gonowon, was reassigned to another manager by the plaintiff's supervisor, Ms. Weigel, because the plaintiff had arranged to adopt Ms. Gonowon's niece and apparently Ms. Weigel felt that the plaintiff's adoption of a subordinate's biological niece created an improper managerial relationship.   The second employee, Ms. Postero, was transitioned off the Project 2010 team in late 2006.   Neither of these two employees was replaced by Sun Trust.

The resignation of the on-site supervisor for the EPS group in Orlando created a "supervision gap" that the plaintiff contends would have been filled by her had she not been on FMLA leave.  Sun Trust disputes this point and asserts that even if the plaintiff had not been on leave, Sun Trust still would have faced the "supervision gap" because the plaintiff could not have provided direct supervision over the two Orlando-based employees from her office in Atlanta.  In any event, Sun Trust maintains that having Banking Services absorb the EPS group was in the best long-term interests of EPS and that it would have happened even if the plaintiff had not been on FMLA leave at the time.

With respect to the plaintiff's responsibilities with Project 2010, the parties disagree as to whether the plaintiff was removed from Project 2010 before or during her FMLA leave.  Although this factual dispute is relevant to show the extent of the plaintiff's duties when her FMLA leave began in comparison to her duties when she returned to work (and thus serve as a basis for determining liability for an FMLA interference claim), it is not the primary basis for the plaintiff's claims.  Rather, it is her loss of three out of six employees as a result of the transfer of the EPS group while she was out on leave that the plaintiff asserts substantially

diminished her management position and converted it into something less than full time.

On January 2, 2007, the plaintiff returned to work.  About eleven days after the plaintiff had returned, her supervisor, Ms. Weigel, decided to fire the plaintiff, and informed her of the decision two weeks later.  Approximately two weeks after notifying the plaintiff, Ms. Weigel sent an email to the senior management team of EIS on February 12, 2007, informing them that the plaintiff's job had been eliminated.

The plaintiff asserts that the reason her supervisor fired her was because of the removal of all but three of the plaintiff's direct reports.  According to the plaintiff, the removal of her direct reports and changes in job responsibilities substantially diminished her job and thus violated her rights under the FMLA. She further contends that this reason is confirmed in an email sent by Ms. Weigel on February 12, 2007 ("February 12 email"), in which Ms. Weigel states that the reason the plaintiff's position was eliminated was based on the changes to the plaintiff's teams and the reduction from eight to three people being managed by her.  Sun Trust disputes the reasoning for the plaintiff's termination and suggests that the reduction in direct reports is only part of the justification.  Another reason was, for example, that the changes

5

in the make-up of the plaintiff's teams supported a determination that the plaintiff's functions could be absorbed by other members of BPG and no longer justified keeping the plaintiff's position. Nevertheless, Sun Trust does not dispute that Ms. Weigel told the BPG team that the reason she fired the plaintiff was because she could not justify the plaintiff's position with only three remaining direct reports.   Irrespective of how Ms. Weigel justified her decision, Sun Trust asserts that the facts show plaintiff was terminated for reasons wholly unrelated to her FMLA leave and thus do not violate her rights under the FMLA.

## B. Motion for Sanctions

With respect to the February 12 email, the plaintiff has put that document into the record as evidence of illegal interference with her substantive rights under the FMLA.   The email from Ms. Weigel informs her team about her decision to eliminate the plaintiff's position and states,

All,

I wanted to let you know that all of my team has received the information about my decision to eliminate the [plaintiff's] Comms manager position as of the end of March.  Maria has talked with her team as well.  You are free to discuss it with your team as you see fit.

A couple of talking points -

1. My decision was based on the changes to the make-up of the team that resulted in a reduction from 8 to 3 people being managed by this position[.]

2. The remaining 3 people . . . will begin reporting directly to me.

Let me know if you have other questions.  Thanks, Leslie

[Mot. for Sanctions, Ex. C, Doc. No. 30-5.]  Notably, Sun Trust did not produce this email during discovery; the plaintiff procured it through other means.  It is undisputed that had the plaintiff not happened to otherwise come by the February 12 email she would not have known of its existence despite its obvious relevance to her claims and Sun Trust's duty to produce it.  Sun Trust's failure to produce this relevant document is the basis for the plaintiff's motion for sanctions.

On or about February 21, 2007, approximately nine days after the February 12 email, Sun Trust received a letter from the plaintiff's attorney advising Sun Trust of her FMLA claims and the likelihood of litigation.  The plaintiff's attorney also cautioned Sun Trust to identify and preserve all relevant documents relating to the plaintiff's termination.  In view of the plaintiff's claims and aware of Sun Trust's obligation to take affirmative steps to preserve all relevant documents, Sun Trust's Senior Vice President and Deputy General Counsel for Regulatory Affairs, Brian Edwards,

initiated an internal investigation.   Within days he identified employees likely to possess relevant information and issued preservation instructions to Ms. Weigel (the plaintiff's supervisor), Ms. Drury (human resources representative to BPG), and Sue Johnson (head of human resources and Ms. Drury's supervisor), among others.[2]   Mr. Edwards' preservation instructions included express guidance to identify and preserve all documents in their possession, including email communications, that related to the plaintiff's termination.

The preservation instructions were issued and received on or about February 22, 2007, approximately ten days after the February 12 email was sent.   It is undisputed that at least two employees, Ms. Weigel (the February 12 email sender) and Ms. Johnson (one of the February 12 email recipients), would have been in possession of the February 12 email at the time they received the preservation

_____

[2]The parties dispute whether Tim Sullivan (Sun Trust Chief Information Officer and Ms. Weigel's supervisor), Bill Franklin (Sun Trust executive on Project 2010 team), and others received the same preservation instructions.  Although it is unclear exactly who was given instructions, the parties do agree that Ms. Weigel, Ms. Drury, and Ms. Johnson were the employees most directly involved in the plaintiff's termination and were timely instructed by Sun Trust's general counsel office to preserve all documents relating to the plaintiff's allegations, including email documents.

instructions absent some affirmative action on their part to delete the message prior to receiving the instructions.

The timing of the email and the preservation instructions is important because Sun Trust's email system automatically deletes all emails from the company's server that are more than thirty days old.  To preserve an email and prevent it from being automatically deleted, employees must take steps to archive their messages outside of the email system.  While Sun Trust does back up its email servers on a daily basis for disaster recovery purposes, the backup tapes are retained for only seven to ten days before being overwritten.  Consequently, an email deleted immediately after being sent or received by an employee will survive on the server only seven to ten days; meanwhile, an email not archived and retained on an employee's server account for the maximum thirty days will survive on the server for up to thirty-seven to forty days.  Thus, any inquiry into whether an employee had access to a relevant email for purposes of preservation requires determining the amount of time between when the email was first on the email server and when preservation should have commenced.  It is also necessary to inquire into what, if any, steps were taken to delete a message before preservation instructions were given.

9

With respect to Ms. Weigel's actions concerning preservation of related documents and in particular emails, it is her failure to preserve and produce her February 12 email that is primarily the basis for the plaintiff's motion. It is undisputed that Ms. Weigel failed to preserve the February 12 email after she had been instructed to do so on or about February 22. This of course assumes that the February 12 email was still on Ms. Weigle's server account or had been archived at least ten days after it was sent. Sun Trust has stated that although she does not archive every email, Ms. Weigel does employ a general practice of archiving her email messages from her inbox and her sent mail folders weekly.

After Ms. Weigel was instructed on about February 22 to identify and preserve all documents relevant to the plaintiff's claims, including emails, she searched her email archives and provided relevant emails to Sun Trust's counsel.[3] However, she did

---

[3]The facts presented by Sun Trust do not discuss whether Ms. Weigle searched all of her emails, including those not archived but remaining on the Sun Trust server at the time of the search. The plaintiff similarly does not make the distinction between a search of an employee's archived emails and an employee's emails on the Sun Trust server. In any event, however, it is clear that Mr. Edwards' preservation instructions included both email storage locations. To the extent a distinction can be made, the parties do not do so. Instead the arguments seem to presume Ms. Weigle's search included both archived emails and server-based emails. Therefore, this court will analyze Ms. Weigle's document preservation searches in the broadest possible manner.

not provide the February 12 email.  On or about September 10, 2007, when the plaintiff produced a copy of the February 12 email, Ms. Weigel again searched her email archive to determine if she had overlooked that particular message when gathering relevant documents.  At that point, Ms. Weigel apparently realized that she had a gap in her sent email archive for the period of January 1, 2007, through February 18, 2007, thus indicating that she had indeed not archived the February 12 email or any others during that period.

The obvious effect of the gap in archived sent emails was that by mid-March (long before the plaintiff advised Sun Trust of the existence of the February 12 email) those emails would have been deleted for having been on the Sun Trust's email server over thirty days.  Consequently, when Ms. Weigel went to redo the search of her email messages, she naturally could not locate the February 12 email if it had not been archived.  The only way the February 12 email would have been available after more than thirty days had expired (approximately mid-March) would have been if the plaintiff had archived her sent items for that time period.    Sun Trust asserts that the reason for the gap in Ms. Weigel's archived sent items is because Ms. Weigel apparently did not follow her usual practice of archiving all of her sent email for the relevant time

period.  This apparently happens when Ms. Weigle is very busy and
falls behind in her archiving routine.

With respect to Ms. Johnson, she similarly undertook a search
for all relevant documents in her possession, including emails,
sometime between February 22 (when she was given the preservation
instruction) and March 5 (the date Sun Trust's counsel met with Ms.
Weigel and Ms. Drury, and the date by which counsel had already
received Ms. Johnson's documents).  However, Ms. Johnson also did
not produce the February 12 email though Sun Trust admits she
received the message.  It is apparently Ms. Johnson's usual
practice to delete all incoming messages that do not require her
follow-up.  Based on this, Sun Trust asserts that Ms. Johnson
likely deleted the email as soon as she received it because the
February 12 email required no action from Ms. Johnson and because
she was already aware of Ms. Weigel's decision to terminate the
plaintiff.  Assuming that she did delete the message soon after
receipt, it would have been unavailable for her or Sun Trust to
preserve.  Consequently, the February 12 email allegedly no longer
existed on Ms. Johnson's email profile on the server when she was
given the preservation instructions and, therefore, it could not
have been produced by her.

## II. Analysis

### A. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof. Id. at 322-23. In order to determine whether a factual issue exists, a court must view the evidence in the light most favorable to the non-moving party. Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a

13

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

The FMLA grants eligible employees the right to take up to twelve weeks of leave annually because of the adoption of a child. 29 U.S.C.A. § 2612(a)(1)(B). An employee taking leave under the FMLA "shall be entitled, on return from such leave -- (a) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (b) to be restored to an equivalent position with equivalent employment benefits, pay, and other conditions of employment." 29 U.S.C.A. § 2614(a)(1). However, an employee's right to be restored to employment under the FMLA does not entitle that employee to "any right, benefit, or position of employment other than . . . [what] the employee would have been entitled [to] had the employee not taken the leave." § 2614(a)(3)(B).

The FMLA creates two types of claims to enforce the rights granted under the Act: (i) interference claims, in which an employee claims that his employer interfered with his substantive rights under the FMLA, and (ii) retaliation claims, in which an employee claims that his employer discriminated against him for engaging in activity protected by the FMLA. 29 U.S.C.A. § 2615(a);

Strickland v. Water Works and Sewer Bd., 239 F.3d 1199, 1206 (11th

Cir. 2001).   To establish a claim for interference, a plaintiff

must show by a preponderance of the evidence only that he was

entitled to a right under the FMLA that was denied by his employer.

Strickland, 239 F.3d at 1207.

### i. The Interference Claim

Both parties in this action move for summary judgment on the

plaintiff's interference claim.   The plaintiff asserts that Sun

Trust interfered with her right to be restored to her same position

or its equivalent upon return from FMLA leave.   The basis for this

claim is the fact that the plaintiff returned to her position at

Sun Trust with less than half of the direct reports she had before

her leave and at least one-third fewer responsibilities.   This

fact, according to the plaintiff, is unequivocal proof that Sun

Trust violated her right to reinstatement under the FMLA.   The

plaintiff contends that she "had an absolute right to return to her

same position or an equivalent position at Sun Trust."  [Pl. Br. in

Supp. of Mot. for Partial Summ. J. 11, Doc. No. 37-2.]

However, the plaintiff's rights in this regard are not

absolute, and her arguments otherwise are not supported by the law.

Although the plaintiff cites for support an Eleventh Circuit Court

of Appeals case, Russell v. North Broward Hosp., 346 F.3d 1335,

(11th Cir. 2003), and a Northern District of Georgia case, Cross v. Southwest Rec. Indus. Inc., 17 F. Supp. 2d 1362, 1370 (N.D. Ga. 1998), these cases do not stand for the proposition that "employers are strictly liable for the failure to reinstate." [Pl. Br., Mot. for Partial Summ. J. 11, Doc. No. 37-2.]

In Russell the court avoided any analysis of a FMLA interference claim and considered solely whether that plaintiff was an "eligible employee" entitled to rights under the FMLA, not whether her right to reinstatement was absolute. 346 F.3d at 1340. In Cross, the court expressly observed that claims arising under the FMLA are subject to employer defenses and, because the employer in that case had asserted the applicable defense under § 2614(a)(3)(B)(an employee is not entitled to any greater rights than what he would have received had he not taken leave), the FMLA claim turned on the merits of that defense. 17 F. Supp. 2d at 1370-71. Thus, an employee's rights under the FMLA are not absolute and an employer is not strictly liable for denying an employee's right because it may assert certain defenses.

A limitation on an employee's FMLA rights, such as the right to be restored to the same or equivalent position, is that an employee is not entitled to any greater right than would have existed had the employee not exercised an FMLA right. 29 U.S.C.A.

16

§ 2614(a)(3)(B); 29 C.F.R. § 825.216(a). This limitation is exercised as an affirmative defense that can be established "if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave." <u>Strickland</u>, 239 F.3d at 1208.[4]

Indeed, the Eleventh Circuit has expressly rejected the argument that rights under the FMLA are absolute, and instead it has held that an eligible employee's interference claim is subject to an employer's "opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave." <u>O'Connor v. PCA Family Health Plan, Inc.</u>, 200 F.3d 1349, 1353-54

---

[4]The plaintiff maintains that Sun Trust has waived its right to pursue this affirmative defense because, under Fed. R. Civ. P. 8(c), it did not raise the defense in its Answer. However, if the opposing party has notice of the defense before trial, is given an opportunity to rebut it in a motion for summary judgment, and is not prejudiced by a failure to comply with Rule 8(c), then an affirmative defense is properly considered notwithstanding the pleading requirements of Rule 8(c). <u>Proctor v. Fluor Enters., Inc.</u>, 494 F.3d 1337, 1350-52 (11th Cir. 2007). Without deciding whether Sun Trust adequately raised the defense previously, the court notes that the plaintiff has fully addressed Sun Trust's arguments in this regard in both the Plaintiff's Reply Brief in Support of Her Motion for Partial Summary Judgment [Doc. No. 50] and the Plaintiff's Response Brief in Opposition to the Defendant's Motion for Summary Judgment [Doc. No. 46]. Consequently, even if Sun Trust failed to raise the defense before, the court concludes that the plaintiff has had ample notice of the defense and has not been prejudiced in any way. Therefore, the court will consider Sun Trust's defense pursuant to § 2614(a)(3)(B).

(11th Cir. 2000).   Accordingly, the fact that the plaintiff returned to a diminished position does not necessarily mean that Sun Trust is liable under the FMLA for not restoring the plaintiff to her pre-leave position or its equivalent.   Sun Trust may avoid liability under the FMLA by showing that its actions affecting the plaintiff would have occurred even if she had not taken leave.

Essentially conceding that the plaintiff's job did change during her FMLA leave and that she was not restored to the same or equivalent position upon her return, Sun Trust asserts the affirmative defense pursuant to § 2614(a)(3)(B) that the plaintiff received the same treatment she would have had she not taken FMLA leave.   Sun Trust takes the position that any change or diminishment in the plaintiff's position, as well as the decision to eliminate that position, was wholly unrelated to her FMLA leave and, therefore, did not violate the plaintiff's rights under the FMLA.

The issue with respect to the interference claim is, therefore, whether the changes that occurred to the plaintiff's position would have occurred even if the plaintiff had not been on leave.

In O'Connor, 200 F.3d at 1354-55, the Eleventh Circuit examined whether the employer who discharged the plaintiff while

18

she was on FMLA leave violated her right to reinstatement.  The district court in that case found that the employer had slated the plaintiff for termination as part of its multiple-phased reduction in force ("RIF"), the legitimacy of which the plaintiff had never challenged.  Upon review, the circuit court affirmed the district court's conclusion that the plaintiff's termination while she was on FMLA leave did not violate her right to reinstatement because the employer's decision to discharge her based on its RIF policy was unrelated to her FMLA status.

In Strickland, 239 F.3d at 1208-09, the Eleventh Circuit similarly considered a claim by the plaintiff that his termination violated his FMLA right to reinstatement.  The employer in that case also raised the affirmative defense to an interference claim under § 2614(a)(3)(B), asserting that its decision to discharge the plaintiff was wholly unrelated to the plaintiff's FMLA leave because its decision was based on the plaintiff's "insubordination and 'walking off the job'."  While the employer asserted that it did not have notice of the employee's FMLA leave and so its termination of him for leaving was unrelated to such leave, the plaintiff asserted that he gave adequate notice of a debilitating diabetic attack, which prevented him from working, sufficient to invoke his FMLA right to reinstatement.  The court concluded that

summary judgment was not appropriate because a reasonable jury could believe either the employer's version of events and conclude that the plaintiff was discharged for reasons wholly unrelated to his FMLA leave, or it could believe the plaintiff's version of events and conclude that his right to reinstatement was violated.

In this case, the facts establishing the reason the plaintiff returned to a diminished position are disputed.  The plaintiff argues that Sun Trust's decision to fill the "supervision gap" created by Mr. Swanson's resignation by transferring the EPS group to another department was because the plaintiff was on leave and not available to rectify the problem created by Swanson's departure herself.  As a result of the EPS group's transfer, the plaintiff lost half of her remaining direct reports and much of her responsibilities.   According to the plaintiff, Ms. Weigel's decision to transfer the EPS group was made solely because the plaintiff was out on leave.  Sun Trust disputes the plaintiff's interpretation of events and contends that Ms. Weigel's decision to transfer the EPS group had nothing to do with the fact that the plaintiff was out on leave.  Instead, according to Sun Trust, Ms. Weigel's decision was influenced, among other things, by the need for on-site supervision in Orlando, something the plaintiff would have been unable to rectify from Atlanta.  Sun Trust also argues

that the plaintiff never had authority to address this type of staffing and organizational issue herself.

The factual basis for transferring the EPS group out from under the plaintiff is disputed. The parties disagree as to whether the plaintiff's job reduction was due to her FMLA leave, and they disagree about whether the plaintiff, and not Ms. Weigel, would have dealt with the "supervision gap" created by Mr. Swanson's resignation had the plaintiff not been on leave. This alone is enough to survive summary judgment under O'Connor and Strickland.[5] Here, a reasonable jury could believe either the plaintiff's version of events or Sun Trust's justification, and that the reduction in the plaintiff's job responsibilities was, or was not, wholly unrelated to her having taken FMLA leave. Consequently, this court concludes that there is an issue of material fact regarding the plaintiff's interference claim and, therefore, summary judgment is not warranted.

---

[5]The analysis of a § 2614(a)(3)(B) defense has been extended beyond interference claims based on wrongful termination. See Standifer v. Sonic-Williams Motors, LLC, 401 F. Supp. 2d 1205, 1221-22 (N.D. Ala. 2005)(finding that employee's interference claim failed because the changes to her compensation plan would have occurred regardless of her leave); Wu v. Southeast-Atlantic Beverage, Corp., 321 F. Supp. 2d 1317, 1340-41 (N.D. Ga, 2004)(applying § 2614(a)(3)(B) defense to interference claim based on employee's demotion).

### ii. The Retaliation Claim

A retaliation claim under the FMLA requires an employee to "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207.  To state a prima facie case of retaliation, a plaintiff must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to the protected activity.  Id.  This can be shown through either direct or indirect evidence, the latter of which requires applying the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Here, Sun Trust asserts that the plaintiff cannot meet her burden to show discrimination through indirect, or circumstantial, evidence.  The plaintiff does not address Sun Trust's circumstantial evidence argument, and instead she argues that Weigel's February 12 email is direct evidence of discrimination.

First, the court addresses the plaintiff's direct evidence argument.  According to the plaintiff, Sun Trust's intentional discrimination against the plaintiff because of her taking FMLA is shown by Ms. Weigle's February 12 email.  Specifically, the plaintiff points to Ms. Weigle's statement, "My decision was based

on the changes to the make-up of the team that resulted in a reduction from 8 to 3 people being managed by this position," [Mot. for Sanctions, Ex. C, Doc. No. 30-5.], and her subsequent testimony that she "couldn't justify the [plaintiff's] position with the three direct reports," [Weigel Dep. 272:18-19, Doc. No. 32], as direct proof of Sun Trust's discriminatory intent.   These statements, according to the plaintiff, are undisputable direct evidence that Sun Trust stripped the plaintiff of her EPS group duties and reports because she took FMLA leave.

However, an employer's statement is direct evidence of retaliation only if the statement can prove the existence of discrimination without any inference or presumption.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).   The Eleventh Circuit has said that this means "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination."   Id.   If the statement merely suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence.  Id.

Here, Ms. Weigel's statements cannot reasonably be read as direct evidence of discrimination.   To adopt the plaintiff's interpretation of the statements, one must infer that Ms. Weigel's

23

decision to terminate the plaintiff was based on her having taken FMLA leave, and one must presume that Ms. Weigel's reasons for doing so were not influenced by any other factors.   Thus, because finding a discriminatory motive based on these statements requires inference and presumption, there is no direct evidence of discrimination.   The only way for Ms. Weigel's statements to constitute direct evidence would be if she said, for example, "I fired the plaintiff because she took FMLA leave." Damon v. Fleming Supermarkets, 196 F.3d 1354, 1359 (11th Cir. 1999).   She clearly does nothing of the sort, and so the only remaining avenue of proving discriminatory retaliation is through circumstantial evidence.

As previously noted, a claim of discriminatory retaliation based on circumstantial evidence is analyzed through the McDonnell Douglas burden-shifting framework.   Under this framework there are three steps: (1) the plaintiff must first sufficiently allege a prima facie case, at which point a rebuttable presumption of discrimination arises; (2) the burden then shifts to the employer to show a legitimate, non-discriminatory reason for taking the action; (3) if the employer shows a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's reason is really a pretext. McDonnell Douglas Corp,

411 U.S. at 802-05.  In this case, establishing a prima facie case requires showing that the plaintiff exercised an FMLA right, that he suffered an adverse action, and that the action was because he exercised an FMLA right.

Sun Trust does not argue that the plaintiff has failed to establish a prima facie case and, for purposes of its summary judgment motion, it assumes that its burden to show a legitimate, non-discriminatory reason for terminating the plaintiff has been triggered, and that it has been shown by way of the explanation given by Ms. Weigel.  The focus of Sun Trust's motion, therefore, is whether the plaintiff has satisfied her burden under the third step of the McDonnell Douglas framework and established that the Sun Trust's legitimate, non-discriminatory reasons are merely a pretext.  Likewise, the plaintiff limits her response to the issue of whether she has shown sufficient evidence to establish a pretext and survive summary judgment on its retaliation claim.

In view of the position taken by the parties, and based on the facts as outlined above, this court concludes that the plaintiff has established a prima facie case by sufficiently alleging that she was eligible for, and exercised her right to take, FMLA leave, and that she suffered an adverse action when Sun Trust terminated her, and that the termination was caused by her FMLA leave.

25

Further, this court concludes that Sun Trust's proffered reasons for termination, that is, departmental efficiency by virtue of the plaintiff's reduced responsibilities no longer justifying her position and a cost-cutting reduction in force policy, establish a legitimate, non-discriminatory reason for the plaintiff's termination.  Consequently, this court turns to the third step of the <u>McDonnell</u> framework and determines whether the plaintiff has established that Sun Trust's proffered reasons are merely a pretext for discrimination.

To meet its burden under this third step, the plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." <u>Brooks v. County Comm'n of Jefferson County</u>, 446 F.3d 1160, 1163 (11th Cir. 2006).  In the context of an FMLA claim, a plaintiff can establish a pretext by pointing to "evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Hurlburt v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1298 (11th Cir. 2006).

In addition to the evidence establishing a prima facie case that also serves to establish pretext, there are additional alleged

26

facts shown by the plaintiff here that point to evidence of pretext but which are disputed by Sun Trust.

First, the plaintiff has pointed to the close temporal proximity--eleven days--between her FMLA leave and her termination, and she points to the fact that Sun Trust's Organizational Design Review program, which Ms. Weigel testified was a basis for the plaintiff's termination, was not in effect until after she had been fired.   Sun Trust asserts that regardless of when the Organizational Design Review began, there were ongoing efforts to cut costs consistent with the goals of the subsequently launched review program. Significantly, this close temporal proximity is itself evidence of pretext, even if it is not alone sufficient to establish a pretext.   Hurlburt, 439 F.3d at 1298.   However, the plaintiff's evidence of close proximity, like that in Hurlburt, is supported by other evidence.

Second, the plaintiff relies on the alleged fact that she was terminated while BPG was growing.   Sun Trust argues that the communications function of BPG, the plaintiff's area of responsibility, was not growing and that the responsibilities formerly performed by the plaintiff had shrunk and were now performed by a non-management employee.   Also, the plaintiff asserts that Sun Trust did not actually eliminate her position

27

because her duties are still being performed within BPG, which is evidence of pretext. Sun Trust contends that the plaintiff's duties are being performed by the group but have been dispersed amongst the group and have been reduced to the point where a non-management employee is solely responsible.

Third, the plaintiff argues Sun Trust's failure to follow its internal policies for a position elimination is evidence of a pretext. Sun Trust responds that its position elimination "policies" referred to by the plaintiff are actually "guidelines" and are not mandatory. Notably, an employer's failure to follow its own policies may be evidence of a pretext. Bass v. Bd. of County Comm'rs, Orange County, 256 F.3d 1095, 1108 (11th Cir. 2001). Here, Sun Trust does not assert that it followed its policies; rather, it asserts that its policies were not mandatory. Whether this is true is not clear. The human resources representative to BPG, Ms. Drury, gave conflicting testimony in this regard. [Drury Dep. 42:3-46:16, Doc. No. 34.] In any event, the fact that such policies are mandatory is clearly disputed, and the extent to which they are gives rise to a showing of pretext for failure to follow such policies.

Reading these facts in the plaintiff's favor, this court concludes that she has presented evidence of a pretext. All of

this evidence taken together shows, at the very least, that there is a dispute of material fact as to whether Sun Trust's reasons were merely a pretext.  The existence of a material issue of fact precludes summary judgment.  <u>Wascura v. City of South Miami</u>, 257 F.3d 1238, 1243 (11th Cir. 2001).  Consequently, summary judgment on the interference claim is not warranted.

Sun Trust also moves for summary judgment on damages, asserting that the plaintiff's job would eventually have been eliminated by the Organizational Design Review of EIS that formally launched in March 2007.  As a result of the review, over 100 positions within EIS were eliminated, including Ms. Weigle's job (the plaintiff's supervisor), and the plaintiff's division, BPG, was dissolved.  Accordingly, Sun Trust argues that even if the plaintiff had not been terminated in January with an effective date of March 31, 2007, she would have lost her job as a result of the position reductions caused by the Organizational Design Review that were effective October 31, 2007.   Because the FMLA limits damages to monetary losses by the employee resulting from an FMLA violation, 29 U.S.C.A. § 2617(a)(1)(A), Sun Trust argues that the plaintiff's damages should be limited to those suffered prior to October 31, 2007.

Without deciding the merits of this claim, the court denies Sun Trust's request for summary judgment on damages.  This issue is more properly addressed at a later stage in the litigation.  Sun Trust may present this issue when the issue of damages is before the court.

## B. Motion for Sanctions

The plaintiff also moves this court for spoliation sanctions against Sun Trust for destroying the February 12 email.  A court may sanction a party for spoliation of evidence by (1) dismissing the case, (2) excluding expert testimony, or (3) issuing jury instructions that raise a presumption against the spoliator.  Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005).[6]  To determine whether spoliation has occurred, a court must address five factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the

---

[6]Although the Eleventh Circuit in Flury analyzed spoliation sanctions in the context of a diversity suit and looked to Georgia state law to inform its opinion, the court also concluded that federal law governs spoliation sanctions because it is an evidentiary matter and that Georgia law on spoliation was consistent with federal law.  Accordingly, while not raised as an issue by the parties, the fact that this case is not a diversity suit has no bearing on the applicability of the law governing spoliation sanctions as determined by the court in Flury.

spoiling party acted in good or bad faith, and (5) the potential
for abuse of expert testimony about evidence not excluded.   Id.

With respect to the first factor, this court concludes that
the plaintiff has been prejudiced by Sun Trust's failure to produce
the February 12 email during discovery.  Although it is true that
the plaintiff obtained the February 12 email through other means,
that fact does not alleviate the damage done to the plaintiff's
case when very relevant evidence, such as the February 12 email, is
not produced during discovery and is subsequently destroyed by
operation of Sun Trust's automatic deletion of emails that are more
than thirty days old and not archived.  If relevant evidence is not
produced, for whatever reason, and then is destroyed before either
party learns of the existence of that evidence, then the absence of
the relevant evidence prejudices the party that would have relied
on it to prove its case.  See Flury, 427 F.3d at 946.

Here, the prejudice to the plaintiff is more attenuated than
the prejudice present in Flury.   In that case, the plaintiff
brought a product liability claim against a vehicle manufacturer
for injury caused by the failure of a vehicle's airbag to deploy
during a collision.  However, the plaintiff allowed the vehicle to
be destroyed and, consequently, the defendant was prejudiced
because it could not examine the vehicle's condition or airbag

31

control unit.   In this case, the prejudice resulting from Sun

Trust's failure to produce an undisputedly relevant email raises a

concern that other relevant emails may have existed at the time the

duty to preserve arose but have since been deleted by Sun Trust's

email server.   In other words, the plaintiff is prejudiced by Sun

Trust's destruction of the February 12 email because it raises a

question of whether there were other relevant emails in existence

at that time but which were also not produced, and there is no

satisfactory answer because all emails not archived by the email

users had since been automatically deleted from the server.

    With respect to the second and third factors, this court

concludes that the prejudice to the plaintiff can be cured and that

the evidence is important to her case because such evidence, like

the February 12 email, goes directly to Sun Trust's reasons for

terminating her employment.

    With respect to the fourth factor, this court concludes that

Sun Trust acted in bad faith.   This determination requires weighing

Sun Trust's culpability against the resulting prejudice to the

plaintiff, but it does not require a finding of malice.

Bridgestone/Firestone North American Tire, LLC v. Campbell, 258 Ga.

App. 767, 770 (2002).   Here, the conduct of Ms. Weigle is

particularly important because she sent the February 12 email and,

as the plaintiff's direct supervisor, made the decision to terminate the plaintiff.   However, approximately ten days after sending the February 12 email, Ms. Weigel failed to produce it in response to Sun Trust counsel's preservation instructions. Assuming, as Sun Trusts argues, that Ms. Weigel did not employ her general practice of weekly archiving her sent items, that nevertheless does not explain why she failed to preserve the document.   The February 12 email still would have been in Ms. Weigle's account on Sun Trust's email server for approximately another twenty days until the system automatically deleted the email for being over thirty days old.   The only way Ms. Weigle could not have preserved the February 12 email when she conducted her search of relevant emails, again assuming that she inadvertently failed to archive the message, was if she had affirmatively deleted the February 12 email from her sent items before the thirty day limit had expired.   Moreover, it is doubtful that Ms. Weigle was not aware of the direct relevance of her February 12 email a mere ten days after she had sent it.   In view of these facts, Ms. Weigle and, therefore, Sun Trust was at least minimally culpable for the failure to disclose the February 12 email.   As discussed above, the failure to disclose the February 12

33

email prejudiced the plaintiff and, therefore, Sun Trust acted in bad faith.

With respect to the fifth factor, this court concludes that there is a potential for abuse.  Although  the leading cases on spoliation sanctions, <u>Flury</u> and <u>Bridgestone</u>, and others, <u>see</u> <u>St. Cyr, v. Flying J. Inc.</u>, 2007 WL 1716365 (N.D. Ga. June 12, 2007)(personal injury action resulting from flash fire that occurred while filling conversion van propane tank), <u>and Frey v. Gainey Transp. Servs.</u>, 2006 WL 2443787 (N.D. Ga. Aug. 22, 2006)(personal injury action arising from accident involving vehicle and tractor-trailer), involve the potential for abuse by experts, the analysis under this fifth spoliation factor is focused on whether the non-spoliating party, despite its ability to present evidence in support of its claims, has had a full opportunity to discover the most relevant and most reliable evidence.  <u>Flury</u>, 427 F.3d at 946.  Here, the plaintiff has not had such an opportunity because Sun Trust's failure to produce what is arguably the most relevant email raises doubts about its assertions that there were never any others in existence.  The absence of any other relevant emails, other than the February 12 email which Sun Trust did not produce, raises the potential for abuse by Sun Trust, albeit slight, because even the mere non-existence of emails relating to

34

Sun Trust's reasons for terminating the plaintiff can support Sun Trust's defense that it did not interfere with the plaintiff's FMLA rights or terminate her in retaliation for exercising those rights.

Therefore, this court concludes spoliation of evidence has occurred and that sanctions are warranted against Sun Trust. This spoliation, however, can be cured by a sanction less severe than outright dismissal. In view of the minimal culpability of Sun Trust and the slight potential for abuse, the court will instruct the jury as to the appropriate inference to draw from the absence of evidence.

**CONCLUSION**

For the foregoing reasons, the plaintiff's Motion for Sanctions [Doc. No. 30] is GRANTED; the plaintiff's Motion for Summary Judgment [Doc. No. 37] is DENIED; and the defendant's Motion for Summary Judgment [Doc. No. 42] is DENIED.


SO ORDERED, this _5TH_ day of March, 2008.


ROBERT L. VINING, JR.
Senior United States District Judge

35